**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| I80 EQUIPMENT, LLC, | ) | Case No. 17-81749 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| FIRST MIDWEST BANK, | ) | |
| | ) | Adversary Proc. No. _____ |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| JEANA K. REINBOLD, | ) | |
| NOT INDIVIDUALLY BUT SOLELY | ) | |
| IN HER CAPACITY AS CHAPTER 7 | ) | |
| TRUSTEE OF THE ESTATE OF | ) | |
| I80 EQUIPMENT, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT DETERMINING THE VALIDITY PRIORITY AND EXTENT OF FIRST MIDWEST BANK'S FIRST-FILED LIEN ON I80 EQUIPMENT, LLC'S ASSETS AND FOR INJUNCTIVE RELIEF**

Plaintiff, First Midwest Bank ("First Midwest" or "Plaintiff"), a secured creditor in this Chapter 7 case, by its undersigned counsel, brings this action to determine that First Midwest's first-filed lien on I80 Equipment, LLC's ("I80" or "Debtor") assets is superior to any other claimants' alleged interest in the Collateral (defined below) and to enjoin Jeana K. Reinbold, solely as Chapter 7 Trustee of the Estate of I80 Equipment, LLC ("Trustee") from turning over or otherwise disposing of the Collateral (defined below) without First Midwest's consent. In support thereof, Plaintiff represents as follows:

## INTRODUCTION

1. This is an action brought by First Midwest under Federal Rules of Bankruptcy Procedure 7001(2), 7001(7), and 7001(9) to determine the validity, priority, and extent of First Midwest's liens in the assets of I80 relative to the validity, priority, and extent of the liens of other claimants in the Collateral (defined below) that is classified as "inventory" under the Uniform Commercial Code ("UCC"), as well as to enjoin the Trustee from taking any action with respect to the Collateral (defined below) without First Midwest's consent. First Midwest holds the earliest filed perfected lien on essentially all of the Debtor's assets, including trucks owned by the Debtor.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157, 1334, and 2201. This proceeding is a core proceeding pursuant to 28 U.S.C. 157(b)(2)(A), (K), (M) and (O).

3. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. This adversary proceeding is commenced pursuant to Bankruptcy Rules 7001(2), (7) and (9), and Sections 105, 361, 362(d)(1), 363(e), and 506(a), (b) and (d) of the Bankruptcy Code.

## PARTIES

5. Plaintiff, First Midwest Bank has its principal place of business located at One Pierce Place, Suite 150, Itasca, Illinois 60143. First Midwest holds the earliest filed perfected lien on essentially all of the Debtor's assets, including trucks owned by the Debtor.

6. The Trustee is the appointed chapter 7 trustee in the Debtor's case.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

I. **First Midwest Perfects Its Security Interest in the Collateral.**

7. I80, as borrower, is obligated under the terms of that certain First Amended and Restated Loan Agreement dated as of March 9, 2015, by and between I80 and First Midwest (the "Loan Agreement"). The approximate amount of indebtedness outstanding under the Loan Agreement as of the Petition Date was $7,373,138.86. A copy of the Loan Agreement is attached hereto as Exhibit A.

8. The Loan Agreement is secured pursuant to the terms of that certain First Amended and Restated Security Agreement (the "Security Agreement") dated as of March 9, 2015. Among other things, the Security Agreement grants to First Midwest a continuing security interest in all of the right, title and interest of I80 in, to and under all of the following personal property and fixtures (and all rights therein) of I80, or in which or to which I80 has any rights, in each case whether now existing or hereafter from time to time acquired:

    (i)    each and every Account;[1]

    (ii)    all cash;

    (iii)    the Cash Collateral Account and all monies, securities, Instruments and other investments deposited or required to be deposited in the Cash Collateral Account;

    (iv)    all Chattel Paper (including, without limitation, all Tangible Chattel Paper and all Electronic Chattel Paper);

    (v)    all Commercial Tort Claims;

    (vi)    all computer programs of Assignor and all intellectual property rights therein and all other proprietary information of Assignor, including but not limited to Domain Names and Trade Secret Rights;

---

[1] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Security Agreement or, if not defined in the Security Agreement, the meanings ascribed to such terms in the Loan Agreement.

4845-2365-3978.2

(vii) all Contracts, together with all Contract Rights arising thereunder;

(viii) all Copyrights;

(ix) all Equipment;

(x) all Deposit Accounts and all other demand, deposit, time, savings, cash management, passbook and similar accounts maintained by Assignor with any Person and all monies, securities, Instruments and other investments deposited or required to be deposited in any of the foregoing;

(xi) all Documents;

(xii) all Financial Assets;

(xiii) all General Intangibles;

(xiv) all Goods;

(xv) all Instruments;

(xvi) all Inventory;

(xvii) all Investment Property;

(xviii) all Letter-of-Credit Rights (whether or not the respective letter of credit is evidenced by a writing);

(xix) all Marks, together with the registrations and right to all renewals thereof, the goodwill of the business of Assignor symbolized by the Marks and all causes of action arising prior to or after the date hereof for infringement of any of the Marks or unfair competition regarding the same;

(xx) all Notes;

(xxi) all Patents, together with all causes of action arising prior to or after the date hereof for infringement of any of the Patents or unfair competition regarding the same;

(xxii) all Permits;

(xxiii) all Security Entitlements and other Investment Property (to the extent not already covered by another clause of this Section 1.1(a));

(xxiv) all Software and all Software licensing rights, all writings, plans, specifications and schematics, all engineering drawings, customer lists, goodwill and licenses, and all recorded data of any kind or nature, regardless of the medium of recording;

4

  (xxv) all Supporting Obligations; and

  (xxvi) all Proceeds and products of any and all of the foregoing (all of the above, the "Collateral").

A copy of the Security Agreement is attached hereto as <u>Exhibit B</u>.

 9. First Midwest properly perfected its security interest in, *inter alia*, the Inventory of the Debtor, by filing a UCC-1 financing statement on April 3, 2015 as Document Number 20181851 FS, filed with the Illinois Secretary of State (the "Financing Statement"). A true and correct copy of First Midwest's Financing Statement is attached hereto as <u>Exhibit C</u>. The Financing Statement remains effective through the date hereof.

**II. <u>First Midwest's Financing Statement Sufficiently Indicates the Collateral It Covers</u>.**

 10. In Illinois, creditors are required to file a financing statement that sufficiently "indicates" the collateral it covers. *See* 810 ILCS § 5/9-502(a).

 11. A financing statement sufficiently indicates the collateral it covers if it provides a description of the collateral pursuant to Section 9-108; or indicates that the financing statement covers all assets or all personal property. 810 ILCS § 5/9-504.

 12. Section 5/9-108 of Illinois' statutory corollary to the UCC, in turn, provides that "a description of personal or real property is sufficient, whether or not it is specific, if it reasonably identifies what is described." 810 ILCS § 5/9-108. A description of collateral reasonably identifies the collateral if it identifies the collateral by a specific listing, category, type of collateral defined in the UCC, quantity, computational or allocational formula, or by "any other method, if the identity of the collateral is objectively determinable." *Id.*

 13. First Midwest's Financing Statement contains the following collateral description ("Collateral Description"): "All Collateral described in First Amended and Restated Security Agreement dated March 9, 2015 between Debtor and Secured Party." <u>Ex. C</u>.

5

14. First Midwest identified the Collateral in the Financing Statement by "any other method" by reference to the Security Agreement and the identity of the Collateral is objectively determinable.

15. The function of a financing statement is only to provide enough notice so that other creditors will make further inquiry to determine the nature and extent of security interests in the debtor's collateral.

16. Under Section 5/9-108 of the ILCS, the Collateral Description apprises other potential creditors that a lien may exist and that the Security Agreement contains information to determine the scope of the lien.

17. Thus, First Midwest fulfilled the notice requirement under Section 5/9-108 of the ILCS. To be clear, a financing statement is not intended to enable other creditors to learn the "true nature" of the secured transaction. The purpose of the notice provision is merely to apprise other creditors that others may have a security interest in the subject of the collateral and that creditors should resort to the security agreement for further information.

18. Accordingly, the Collateral Description is sufficient. First Midwest's security interest was duly perfected by the filing of the Financing Statement with the Illinois Secretary of State.

## **FIRST CAUSE OF ACTION**
**Declaratory Judgment**

19. The Plaintiff incorporates paragraphs 1-18 as if fully re-alleged herein.

20. There is an actual controversy between the Plaintiff and Defendant regarding whether First Midwest has an interest in the Collateral that is senior to the interest of other claimants in the Collateral, which is of sufficient immediacy to warrant judicial relief under 28 U.S.C. § 2201.

6

21. There is an actual controversy between the Plaintiff and Defendant regarding First Midwest's and the chapter 7 estate's respective rights to the Collateral which is of sufficient immediacy to warrant judicial relief under 28 U.S.C. § 2201.

22. Accordingly, First Midwest is entitled to a judicial declaration that First Midwest has a properly perfected security interest, senior to the alleged interests of other claimants and Trustee, in the Collateral.

### SECOND CAUSE OF ACTION
**Injunctive Relief**

23. The Plaintiff incorporates paragraphs 1-22 as if fully re-alleged herein.

24. Section 105(a) of the Bankruptcy Code authorizes and empowers this Court to issue any orders that will further the purposes and goals of the Bankruptcy Code, assist in the orderly and effective administration of the Debtor's bankruptcy case, aid in the preservation of the assets of the Debtor's estate, and maximize value for all stakeholders.

25. Pursuant to sections 362 and 105(a) of the Bankruptcy Code, this Court may enjoin actions that undercut purposes of the automatic stay where necessary to prevent an adverse impact on the Debtor's estate or to assure the orderly administration of the Debtor's chapter 7 estate and proceedings.

26. Parties-in-interest have asserted competing claims in the Collateral, including certain trucks and vehicle titles, and have asked the Trustee for turnover of Collateral in Trustee's possession.

27. The issuance of an injunction is appropriate to prohibit the Trustee from turning over First Midwest's Collateral to third parties and to protect from depletion of assets available to satisfy First Midwest's claim.

28. First Midwest is substantially likely to prevail on the merits.

7

29. In addition, the balance of harms weighs in favor of enjoining the Trustee from disposing of the Collateral without First Midwest's consent.

30. Allowing the Trustee to turn over the Collateral to third parties would result in irreparable harm to First Midwest, and First Midwest is without adequate remedy at law.

31. First Midwest has the senior security interest in the Collateral with priority over other claimants.

32. The value of the Collateral is not sufficient to satisfy First Midwest's secured claim.

33. Given these competing interests, an injunction barring the Trustee from disposing of the Collateral is appropriate and essential. Accordingly, good cause exists for the entry of injunctive relief and the Court should enjoin the Trustee from disposing of the Collateral without First Midwest's consent.

## REQUEST FOR RELIEF

WHEREFORE, the Plaintiff prays for relief as follows:

(1) on the First Cause of Action, enter judgment in favor of the Plaintiff and further enter a declaration that: First Midwest has a properly perfected security interest in the Collateral senior to the interests of other claimants;

(2) on the Second Cause of Action, enter a declaration that the Trustee's is enjoined from disposing of the Collateral without First Midwest's consent;

(3) and such other and further relief as this Court deems just and proper.

Dated this 17th day of January, 2018.

Respectfully submitted,

FIRST MIDWEST BANK

By: /s/ Matthew J. Stockl
    One of Its Attorneys

Mark L. Prager (No. 2246503)
William J. McKenna (No. 3124763)
Matthew J. Stockl (No. 6304087)
Foley & Lardner LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
312.832.4500
312.832.4700 (fax)
mprager@foley.com
wmckenna@foley.com
mstockl@foley.com

9