**SIGNED THIS: August 20, 2018**

_____
**Thomas L. Perkins
United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE: ) | |
| ) | |
| I80 EQUIPMENT, LLC, ) | Case No. 17-81749 |
| ) | |
| Debtor. ) | |
| _____ ) | |
| FIRST MIDWEST BANK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Adv. No. 18-8003 |
| ) | |
| JEANA K. REINBOLD, NOT INDIVIDUALLY ) | |
| BUT SOLELY IN HER CAPACITY AS ) | |
| CHAPTER 7 TRUSTEE OF THE ESTATE OF ) | |
| I80 EQUIPMENT, LLC, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

1

```
JEANA K. REINBOLD, NOT INDIVIDUALLY  )
BUT SOLELY IN HER CAPACITY AS        )
CHAPTER 7 TRUSTEE OF THE ESTATE OF   )
I80 EQUIPMENT, LLC,                  )
                                     )
                 Counter-Plaintiff,  )
                                     )
    vs.                              )
FIRST MIDWEST BANK,                  )
                                     )
                 Counter-Defendant.  )
                                     )
```

**OPINION**

This matter is before the Court on cross motions for Judgment on the Pleadings filed by the Plaintiff, First Midwest Bank, and the Defendant, Jeana K. Reinbold, as Chapter 7 Trustee for the estate of I80 Equipment, LLC. The cross motions are addressed to both Count I of the complaint seeking declaratory relief and to the related amended counterclaim asserted by the Trustee.[1] The issue concerns the perfection of First Midwest's security interest in the assets of the Debtor, I80 Equipment, LLC.

I80 Equipment, LLC, operated a commercial business whereby it purchased and refurbished bucket trucks for resale. Prior to the Debtor's bankruptcy filing, First Midwest made a commercial loan to the Debtor. On March 9, 2015, the Debtor executed a First Amended and Restated Loan Agreement and a First Amended and Restated Security Agreement in favor of First Midwest Bank, granting a security interest in twenty-six specifically identified categories of

---

[1] Count II of the Bank's complaint, seeking injunctive relief, was dismissed without prejudice pursuant to a stipulation of the parties filed Feb. 9, 2018, and Amended Order entered Feb. 13, 2018.

2

collateral, including accounts, chattel paper, equipment, general intangibles, goods, instruments and inventory and all proceeds and products thereof. The Debtor owns no real estate and the security interest granted First Midwest covers substantially all of the Debtor's assets. First Midwest filed its Financing Statement on April 3, 2015, with the Illinois Secretary of State, describing its collateral as "All Collateral described in First Amended and Restated Security Agreement dated March 9, 2015 between Debtor and Secured Party."[2] The Debtor defaulted under the terms of the loan in November, 2017. First Midwest's proof of claim states that it is owed more than $7.6 million.

On December 6, 2017, the Debtor filed a voluntary petition for relief under Chapter 7, whereupon Jeana K. Reinbold was appointed Trustee. First Midwest brought this action against her, seeking a declaratory judgment that its security interest in the collateral of the Debtor is properly perfected and senior to the interest of all other claimants, including the Trustee. By her amended answer, the Trustee denies that First Midwest's security interest was properly perfected and asserts an amended counterclaim in exercise of her strong-arm powers pursuant to section 544(a) of the Bankruptcy Code, to avoid First Midwest's lien.[3] Both parties filed motions for judgment on the pleadings which have been fully briefed and are presently before the Court for decision. With the consent of First Midwest, the Trustee sold the assets of the estate for $1,862,806 and is holding the net proceeds pending this Court's decision.

---

[2] The TRUSTEE points out that First Midwest had filed an earlier financing statement on March 10, 2014, in conjunction with a previous security agreement, which described the collateral in a similar fashion as "All Collateral described in Security Agreement dated March 10, 2014 between Debtor and Secured Party." That financing statement will share the same fate as the later-filed statement, as the analysis is identical.

[3] Section 544(a) of the Bankruptcy Code empowers a bankruptcy trustee to avoid interests in the debtor's property that are unperfected as of the filing of the petition.

Under Federal Rule of Civil Procedure 12(c), applicable to this proceeding by Bankruptcy Rule 7012(b), a motion for judgment on the pleadings may be used to dispose of a case based upon the underlying substantive merits when the material facts are not in dispute. In this role, the appropriate standard is that applicable to motions for summary judgment. *Alexander v. City of Chicago*, 994 F.2d 333 (7th Cir. 1993). When reviewing a motion for summary judgment, all facts and inferences are to be viewed in a light most favorable to the non-moving party. The motion is properly granted where the material facts are undisputed and the movant is entitled to judgment as a matter of law. *Flora v. Home Fed. Savings & Loan Ass'n,* 685 F.2d 209 (7th Cir. 1982).

Courts have routinely held that creditors may incorporate by reference security agreements into financing statements, where the security agreement is identified in and filed with the financing statement, and that such incorporation satisfies the collateral description requirements for financing statements under Article 9 of the Uniform Commercial Code (UCC). See *In re The Holladay House, Inc,* 387 B.R. 689, 696 (Bankr. E.D. Va. 2008)(citing cases), *aff'd,* 2008 WL 4682770 (E.D. Va.). First Midwest takes the position that a financing statement's identification of the security agreement as the document containing the description of the collateral, without filing it as part of the financing statement and without setting forth any collateral description in the financing statement, is nevertheless sufficient to perfect its security interest. The parties agree that no published opinion by any court addresses this exact issue.

The parties agree that there is no dispute concerning the material facts and that the sole issue for decision by the Court is whether First Midwest has properly perfected its security interest. That issue is governed by Revised Article 9 of the Uniform Commercial Code, adopted in Illinois in 2001. 810 ILCS 5/9-101, *et.seq.* As a general rule, applicable here, an attached

security interest is perfected by the filing of a UCC-1 financing statement. 810 ILCS 5/9-310(a). Prior to the adoption of Revised Article 9, former Illinois UCC section 9-402(1) provided that a financing statement was sufficient if it contained a statement indicating the types, or describing the items, of collateral. Under Revised Article 9, the issue of whether and in what manner collateral must be described in a financing statement is governed by sections 9-502, 9-504 and 9-108.

Section 9-502(a), setting forth the mandatory requirements for the information that must be included in a financing statement, provides that the contents of the financing statement are sufficient only if it:

(1) provides the name of the debtor;

(2) provides the name of the secured party or a representative of the secured party;  and

(3) indicates the collateral covered by the financing statement.

810 ILCS 5/9-502(a). The controversy here, involving only the third requirement, is whether a statement that the collateral is described in the underlying security agreement sufficiently "indicates the collateral."

Elaborating on the indication of collateral, Section 9-504 provides that a financing statement sufficiently indicates the collateral it covers if the financing statement provides:

(1)  a description of the collateral pursuant to Section 9-108; or

(2) an indication that the financing statement covers all assets or all personal property.

810 ILCS 5/9-504. First Midwest is not contending that its financing statement indicates that it covers all assets or all personal property.

Section 9-108, which governs the sufficiency of description of the collateral for both security agreements and financing statements, provides:

5

      (a) Sufficiency of description. Except as otherwise provided in subsections (c), (d), and (e), a description of personal or real property is sufficient, whether or not it is specific, if it reasonably identifies what is described.

      (b) Examples of reasonable identification. Except as otherwise provided in subsection (d), a description of collateral reasonably identifies the collateral if it identifies the collateral by:

        (1) specific listing;
        (2) category;
        (3) except as otherwise provided in subsection (e), a type of collateral defined in the Uniform Commercial Code;
        (4) quantity;
        (5) computational or allocational formula or procedure; or
        (6) except as otherwise provided in subsection (c), any other method, if the identity of the collateral is objectively determinable.

      (c) Supergeneric description not sufficient. A description of collateral as "all the debtor's assets" or "all the debtor's personal property" or using words of similar import does not reasonably identify the collateral.

First Midwest contends that its financing statement is sufficient under section 9-108(b)(6) as an "other method" of reasonably identifying its collateral, asserting that the identity of its collateral is "objectively determinable" by an examination of the amended security agreement, which is identified by its date. Arguing that the concept of inquiry notice should be applied broadly, First Midwest maintains that subsequent creditors are clearly placed on notice that the Debtor's property, or some of it, is subject to a prior lien and that further inquiry need be made to ascertain the extent of the collateral covered by the amended security agreement. The justification offered for this result is premised upon the "notice filing" system adopted by Article 9, under which the purpose behind the filing of a financing statement is merely to provide notice to third-party creditors that property of the debtor may be subject to a prior security interest, and that further inquiry may be necessary to determine the identity of the collateral.

The Trustee, in support of her motion for judgment on the pleadings, maintains that First Midwest's financing statement is deficient under the above provisions of Revised Article 9. She contends that the mere reference to the collateral as being described in the amended security

6

agreement does not suffice to indicate, describe or reasonably identify any collateral. The Trustee asserts that the plain language of the applicable statutory provisions mandates that a financing statement contain a description of the property that is the collateral, which description is sufficient if it reasonably identifies the collateral. The collateral cannot be "reasonably identified" under sections 9-108(a) and (b), if the financing statement makes no attempt to describe it at all. Relying on the long-standing principle that the security agreement and the financing statement are "double screens" through which the secured party's rights to collateral are determined, the Trustee maintains that a financing statement must contain a stand-alone description of the collateral, which can be put to that test.

The Trustee advocates that the meaning of "any other method" as used in section 9-108(b)(6) is best discerned by applying the rule of *ejusdem generis*, meaning of the same kind, class or nature. The Trustee relies upon *People v. Capuzi,* 20 Ill.2d 486 (1960), in which the Illinois Supreme Court set forth the principle that where a statute specifically enumerates several classes of persons or things and includes at the end of such enumeration an additional, more general, class of "other" persons or things, the doctrine of *ejusdem generis* instructs that the word "other" be interpreted relatively narrowly to mean "of a like kind" or "similar to" the specifically enumerated classes of persons or things. *Id.* at 493-94. The Trustee contends that since the enumerated list set forth in section 9-108(b)(1) through (5) sets forth examples of acceptable methods of stating a description of the collateral in a financing statement, and is followed immediately by the sixth alternative "any other method, if the identity of the collateral is objectively determinable," under the doctrine of *ejusdem generis* this last class should be read, in like manner, as referring to alternative ways of describing the collateral.

Since the collateral description rules set forth in section 9-108 apply to both a security agreement and a financing statement, it is important to recognize at the outset that the differing purposes of the two documents has resulted in different standards being applied to the collateral descriptions contained therein. The requirement that the security agreement reasonably describe the collateral serves an evidentiary purpose, that is to create an enforceable security interest in clearly identified property of the debtor and to set forth enforceable contract terms and covenants respecting that interest and the collateral. See 810 ILCS 5/9-203, Uniform Commercial Code Comment 5.  The purpose of a financing statement is to put third parties on notice that the secured party who filed it may have a perfected security interest in the collateral described, and that further inquiry into the extent of the security interest is prudent. *Magna First Nat. Bank & Trust v. Bank of Illinois,* 195 Ill.App.3d 1015, 1019 (1990). While it is permissible for the financing statement to describe the collateral with the same specificity as the security agreement, it is not necessary. Whereas the full extent of the security interest must be set forth in the security agreement, the financing statement is often an abbreviated or streamlined version "for the purpose of giving notice to third parties of the essential contents of the security agreement." *Helms v. Certified Packaging Corp.,* 551 F.3d 675, 679 (7th Cir. 2008)(citing 1Eldon H. Reiley, *Security Interests in Personal Property* §7:3, pp.7-3 to 7-4 (3d ed. 1999)).

The Illinois Code Comment to an earlier version of Article 9 explained, with respect to the difference in the level of specificity of description of the collateral between a financing statement and the security agreement, that "[t]he security agreement and the financing statement are double screens through which the secured party's rights to collateral are viewed, and his rights are measured by the narrower of the two." Ill.Ann.Stat. ch. 26, §9-110, Illinois Code Comment at p. 85 (Smith-Hurd 1974). The "double screen" concept has been adopted by Illinois

courts. See *Allis-Chalmers Corp. v. Staggs,* 117 Ill.App.3d 428, 433 (1983). Thus, it is widely recognized on one hand, that a financing statement may not enlarge a security interest by describing property not included in the security agreement, and on the other hand, that if a financing statement fails to describe some or all of the property listed in the security agreement, the security interest is not perfected as to the omitted property. See *Matter of Martin Grinding & Mach. Works, Inc.,* 793 F.2d 592, 594-95 (7th Cir. 1986); *In re JII Liquidating, Inc.,* 341 B.R. 256, 274-75 (Bankr. N.D. Ill. 2006).

Beginning with the most general statutory provision, it is mandatory under section 9-502(a) that the financing statement "indicates the collateral." Next, section 9-504 provides that the indication of the collateral is sufficient if the financing statement contains a description of the collateral permitted under section 9-108 or if it contains a supergeneric description of all assets or all personal property. First Midwest does not contend that its financing statement contains a permissible supergeneric description. Finally, section 9-108(a), entitled "[s]ufficiency of description," provides that "a description of personal or real property is sufficient, whether or not it is specific, if it reasonably identifies what is described." Section 9-108(b) then provides examples of descriptions that reasonably identify the collateral and thus are deemed to constitute sufficient descriptions.

Taken together, these three statutory sections establish a roadmap for perfection as it pertains to collateral description. The financing statement must indicate the collateral, which may be sufficiently accomplished by following the guidance of section 9-108, which sets forth several options for describing the property that is the collateral. These three sections are each addressing, plainly and unambiguously, the same subject: the description of the property that is the collateral. Section 9-108 expressly addresses the sufficiency of the *description* of the collateral. As stated

9

therein, the reasonable identification standard set forth in section 9-108(a) applies, not to the financing statement in a general way, but specifically to the "description of personal or real property." By its plain language, section 9-108(a) requires, in order to pass the sufficiency test, that the "description" of the property used in the document "reasonably identify" the property to which it refers. It follows that the reasonable identification standard cannot be met if the financing statement does not contain a description of the property.

Likewise, the starting point for interpreting the phrase "any other method" used in section 9-108(b)(6), is to note its placement in section 9-108, which is narrowly targeted toward the sufficiency of the "description of personal or real property." The phrase "any other method" as well as the same sentence's usage of "objectively determinable," must be construed in the context of its placement in section 9-108 and specifically in paragraph (b) of that section, which provides specific examples of descriptions of collateral that meet the reasonable identification standard. Those examples are all variations on the same theme: how to sufficiently describe the collateral.

The test for the sufficiency of "any other method," is whether the identity of the collateral is "objectively determinable" from the descriptive terms used in the document, in our case the financing statement.[4] This follows from the language and structure of sections 9-108(a) and (b), the broader context afforded by sections 9-502 and 9-504, and is consistent with the interpretational doctrine of *ejusdem generis* advocated by the Trustee. It is readily apparent that the "double screen" concept implemented in the earlier version of Article 9, which incorporates a

---

[4] In order to bring the meaning of §9-108(b)(6) more clearly to the reader's eye by reconstructing its syntax, the pertinent portion may be read as "a description of collateral reasonably identifies the collateral if [the description] identifies the collateral by . . . any other method, [as long as] the identity of the collateral is objectively determinable [from the description]." It is apparent that "any other method" is correctly construed to mean any other method of describing the collateral.

10

requirement of two separate collateral descriptions to achieve perfection, has been reinforced and expanded upon in Revised Article 9 through the adoption of sections 9-502, 9-504 and 9-108.

This Court agrees with the Trustee that First Midwest's financing statement does not describe the collateral. Rather, it attempts to incorporate by reference the description of collateral set forth in a separate document, not attached to the financing statement. The financing statement, on its face, provides no information whatsoever, and therefore no notice to any third party, as to which of the Debtor's assets First Midwest is claiming a lien on, which is the primary function of a financing statement.

Neither party cites any Illinois case law that addresses the kind of incorporation by reference method used by First Midwest. Two bankruptcy court opinions are instructive, where each court rejected a creditor's argument that a financing statement's reference to the underlying security agreement was a sufficient description of collateral. Applying Revised Article 9 as a matter of Wisconsin law in *In re Lynch,* 313 B.R. 798 (Bankr. W.D. Wisc. 2004), the bankruptcy court was faced with a financing statement that described the collateral as "general business security agreement now owned or hereafter acquired." The security agreement was not filed with the financing statement. The secured party argued that the description was sufficient because all that is required of a financing statement is to put third parties on notice of the existence of a security interest. Awarding judgment to the trustee, the court rejected this argument, determining that the statute clearly requires that the collateral must be described and that simply identifying the description at issue did not identify or describe any of the collateral and thus failed to put third parties on notice as to which property of the debtor was subject to the security interest.

A similar issue was addressed by a Kentucky bankruptcy court in *In re Lexington Hospitality Group, LLC,* 2017 WL 5035081 (Bankr. E.D. Ky.). The financing statement at issue

described some, but not all, of the categories of assets covered by the security agreement. The financing statement also included the following sentence: "[t]his Financing Statement also relates to an obligation secured by a security interest in collateral and is evidenced by the Mortgage referred to above and the All-Assets Security Agreement executed on September 28, 2015." The creditor argued that the reference to the "All-Assets Security Agreement" was sufficient to constitute a supergeneric description permitted under section 9-504(2), so that the security interest in the collateral not specifically listed in the financing statement was nonetheless perfected. The court rejected this argument, reasoning that a reference to a document does not describe what is in the document, and holding that the reference to the security agreement alone did not constitute the required description of the collateral. Cf. *In re Duesterhaus Fertilizer, Inc.*, 347 B.R. 646 (Bankr. C.D. Ill. 2006)(Gorman, J.)(determining a financing statement's cross-reference to an unattached prior financing statement to be an insufficient description of collateral under section 9-502).

First Midwest's First Amended Security Agreement takes a security interest in substantially all of the Debtor's personal property. In accordance with section 9-504(2), which permits the use of a supergeneric description in a financing statement, First Midwest could have perfected its security interest by indicating its collateral in the financing statement as "all assets" or "all personal property." The Uniform Commercial Code Comment to section 9-504 refers to the supergeneric description alternative as a "safe harbor" that "expands the class of sufficient collateral references" in order to accommodate the common practice of debtors granting a security interest in all or substantially all of their assets.

In support of its motion, First Midwest relies on *Chase Bank of Florida, N.A. v. Muscarella*, 582 So.2d 1196 (Fla. Dist. Ct. App. 1991)(applying prior version of Article 9 under

12

Florida law), involving a priority dispute between two creditors, each of whom had been granted a security interest in the debtor's rights as a general partner in a Florida limited partnership. A security interest was first granted to Chase Bank, who filed a financing statement that described the collateral as property listed on an attached schedule, which further provided:

> "All of the Debtor's right, title and interest, in the "Collateral" as more particularly defined and described in that certain Assignment of Partnership Interest and Security Agreement dated January 20, 1987, up to an amount not to exceed $600,000."

Reversing the lower court's determination that the collateral description was not sufficient, the appellate court, applying an inquiry notice standard, reasoned that the financing statement's reference to the Assignment of Partnership Interest was enough to put subsequent creditors on notice that the collateral may include an assignment of the debtor's share in the profits and distributions of the limited partnership. Presumably, if the financing statement had not specifically referred to the Assignment of Partnership Interest, the description would have been insufficient. Therefore, the *Muscarella* opinion does not stand for the proposition that it is sufficient for a financing statement to merely refer to the underlying security agreement and thereby incorporate by reference that document's collateral description. Instead, *Muscarella* is correctly interpreted as a case where the court determined that an adequate indication of the specific collateral in question, the debtor's partnership interest, was set forth in the financing statement itself.

First Midwest also relies on *In re Amex-Protein Dev. Corp.*, 504 F.2d 1056 (9th Cir. 1974), involving a creditor's failure to have the debtor sign a security agreement, where the court considered whether a promissory note and a financing statement, in combination, were sufficient to meet the requirements for a security agreement under the California Commercial Code. The note provided that "[it] is secured by a Security Interest in subject personal property as per

13

invoices." The financing statement filed by the creditor listed five specific items of collateral and, as required by the statute in effect at that time, was signed by the debtor. The court concluded that the note, by stating the intent of the parties to create a security interest and incorporating the subject invoices by reference, along with the more specific description of collateral contained in the financing statement, satisfied the requirement of a written security agreement signed by the debtor. The court determined that, with respect to a security agreement, parol evidence would be admissible in order to help define the items of collateral that the parties intended to be covered by the security interest. The court also quoted with approval the following discussion of the doctrine of incorporation by reference:

> "There is nothing in the Uniform Commercial Code to prevent reference in the security agreement to another writing for particular terms and conditions of the transaction. There is also nothing in the Uniform Commercial Code to prevent reference in the security agreement to another writing for a description of the collateral, so long as the reference in the security agreement is sufficient to identify reasonably what it described. In other words, it will at times be expedient to give a general description of the collateral in the security agreement and refer to a list or other writing for more exact description. In addition the security agreement could itself consist of separate parts, one a general description of the obligation secured and the rights and duties of the parties, and the other a description of the collateral, both such writings being signed by the debtor and stated to comprise a single security agreement or referring to each other."

*Amex-Protein Dev. Corp.,* 504 F.2d at 1060 (citing 44 Cal.Jur.2d Rev. Secured Transactions §109 at 387-88).

Decided under a prior version of the Uniform Commercial Code, *Amex-Protein* stands for the propositions, first, that a signed promissory note and a signed financing statement, taken together under the composite documents doctrine, may satisfy the requirements for a valid security agreement and, second, a *security agreement* may incorporate by reference a specific description of the collateral contained in a separate document so long as the security agreement contains at least a general description of the collateral. This opinion in no way supports First

14

Midwest's contention here, that a financing statement that contains no description of the collateral may instead simply incorporate by reference the collateral description contained in an unfiled security agreement and thereby meet the requirements for an effective financing statement under the applicable provisions of Revised Article 9. The composite document doctrine is simply not applicable in the context of a financing statement.

By way of comparison, it is well established that parol evidence may not be used to expand the description of collateral or otherwise alter the unambiguous language of a security agreement. *Matter of Martin Grinding & Mach. Works, Inc.,* 793 F.2d 592 (7th Cir.1986)(neither financing statement nor loan documents may expand security interest beyond that stated in unambiguous security agreement); *Signal Capital Corp. v. Lake Shore Nat. Bank,* 273 Ill.App.3d 761, 769 (Ill.App. 1 Dist. 1995). A narrow exception has been recognized for the admission of parol evidence to clarify an ambiguous collateral description contained in a security agreement. *Citizens Bank and Trust v. Gibson Lumber Co.,* 96 B.R. 751 (W.D. Ky. 1989); *In re Keene Corp.,* 188 B.R. 881 (Bankr. S.D.N.Y. 1995). Thus, errors and omissions in the description of collateral in a security agreement are not generally "correctable" as against third parties through extraneous evidence, instead requiring execution of an amended security agreement.

Similarly, extraneous evidence is not admissible in a priority dispute to correct errors and omissions in a financing statement or to clarify ambiguities. In order to fulfill the purpose of the notice filing system, a financing statement must stand on the description of collateral contained within the four corners of the filed document, including any filed attachments. Given that the description of collateral in a financing statement cannot, for purposes of perfection, be corrected or expanded upon by reference to the underlying security agreement, the same policy dictates that the collateral description may not be supplied in its entirety by reference to the assets

described in an unfiled security agreement. Revised Article 9 clearly and unambiguously requires a collateral description be included as part of the filed financing statement. See *In re Lynch,* 313 B.R. at 800.

Likewise, First Midwest's theory that a broad form of inquiry notice should be applied is contradicted by the statutory requirement that the financing statement contain a collateral description. While notice to third parties and the possibility of further inquiry are certainly to be expected in some instances under Article 9's notice filing system of perfection, the concept of inquiry notice is more particularized than First Midwest acknowledges. First Midwest theorizes that its financing statement is sufficient because it gives notice that First Midwest has obtained a security interest in property of the Debtor which, while not identified in any way in the financing statement, may be readily identified, i.e., "objectively determined," by a further inquiry directed toward the security agreement identified in the financing statement.

The statutory provisions, however, make clear that the notice required to be given by a financing statement is notice of the specific items of collateral themselves, of the kinds or types of property subject to the security interest, or that the debtor has granted a blanket lien on "all assets" or "all personal property." A financing statement that fails to contain any description of collateral fails to give the particularized kind of notice that is required of the financing statement as the starting point for further inquiry. Other courts recognize that the mere filing of a financing statement does not trigger a duty for third parties to inquire into the terms of the underlying security agreement. Rather, it is only when the financing statement contains a sufficient description of the collateral that the duty to pursue further inquiry arises. *Holladay House,* 387 B.R. at 696; *In re I.A. Durbin,* 46 B.R. 595, 601 (Bankr. S.D. Fla. 1985).

By authorizing usage of a supergeneric description in financing statements, the drafters of Revised Article 9 drew a line in the sand at that point for the most general type of collateral description that could be used in order to sufficiently indicate the collateral. The drafters could have gone one step further by authorizing a mere reference to the underlying security agreement as an acceptable method of identifying the collateral. They did not do so, however, and neither will this Court.

For those reasons, this Court determines (and predicts that the Illinois Supreme Court would hold) that First Midwest failed to perfect its security interest and the Trustee is entitled to avoid its lien in the exercise of her strong-arm powers under section 544(a) of the Bankruptcy Code. Accordingly, the Trustee is entitled to judgment on the pleadings on Count I of the complaint and on her amended counterclaim.

This Opinion constitutes this Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure. A separate judgment order will be entered.

# # #